IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BAHAR MIKHAK, | Case No. 21-cv-06919-CRB |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| UNIVERSITY OF PHOENIX INC., et al., | |
| Defendants. | |

Now pending is Defendants'[1] Motion to Dismiss Plaintiff Bahar Mikhak's First Amended Complaint (FAC). See Mot. (dkt. 116). Mikhak has opposed the motion, see Opp'n (dkt. 123) and Defendants have replied, see Reply (dkt. 128).[2] The Court finds this matter suitable for resolution without oral argument, see Civil Local Rule 7-1(b), and grants the motion, dismissing the FAC with prejudice.

## I.      BACKGROUND

This litigation has a lengthy backstory. In short, Mikhak brought suit in Mikhak v. University of Phoenix et al., Case No. 16-cv-901-CRB, in 2016, arguing that her former employer, UOP, failed to hire or promote her because of her religion, subjected her to a hostile work environment, and retaliated against her, all in violation of Title VII and FEHA. See generally Compl. (dkt. 1) in Case No. 16-cv-901-CRB. UOP moved to compel arbitration. See Mot. to

---

[1] Defendants are the University of Phoenix (UOP), Neda N. Dal Cielo, Kimberly Gee Ramos, Marlene S. Muraco, Cooper J. Spinelli, Littler Mendelson P.C., Matthew E. Walls, Barbara Taylor, Kim Spence, and Dr. William Pepicello. See FAC (dkt. 111) at 1.

[2] Mikhak's objection to the reply brief as untimely, see Admin. Mot. (dkt. 130) at 5–6, is DENIED. All parties in this case have benefitted from flexible deadlines, and Mikhak was not prejudiced by any delay. See also Opp'n to Admin. Mot. (dkt. 131) at 4 ("Plaintiff, who is complaining that Defendants had a total of twenty-two days to reply to her opposition, neglects to mention that she took forty-six days to file that opposition.").

Compel (dkt. 14) in Case No. 16-cv-901-CRB.  As this Court later described:

> The Court granted the motion to compel arbitration on June 21, 2016.
> See Order Granting Motion to Compel (dkt. 27) in Case No. 16-901.
> Mikhak could have initiated arbitration any time thereafter.  Instead,
> Mikhak moved for reconsideration of that order in August 2017, see
> Mot. for Reconsideration (dkt. 32) in Case No. 16-901, and the Court
> explained that she had failed "to show reasonable diligence," Order
> Denying Reconsideration (dkt. 34) in Case No. 16-901.  Mikhak then
> moved to stay the case, see Mot. to Stay (dkt. 36) in Case No. 16-901,
> and the Court denied the motion, issuing an oral order to show cause
> that dismissed the case for failure to prosecute unless Mikhak filed a
> declaration by November 27, 2017 stating that she had initiated
> arbitration, see Motion Hearing (dkt. 43) in Case No. 16-901.  Instead
> of initiating arbitration, Mikhak sent a letter to the Court on
> November 24, 2017, asking for an "extended continuance" with "no
> time pressure," and she terminated her counsel.  Letter (dkt. 44) in
> Case No. 16-901; Motion for Leave to File (dkt. 45) in Case No. 16-
> 901.  The Court explained:
>
> > The Court will not reconsider its June 2016 order compelling
> > arbitration.  Nor will the Court give Plaintiff a 'no time
> > pressure' extension to do something the Court compelled her
> > to do nearly a year and a half ago.  Plaintiff asserts that she
> > has 'been working on this case for 3 years' and that she does
> > not want to 'los[e] all [of her] investment in striving for
> > justice.'  See Plaintiff Letter at 1.  If Plaintiff wishes to pursue
> > her case, she must do so in arbitration.  See Order re
> > Arbitration; see also Fidelity Philadelphia Trust Co. v. Pioche
> > Mines Consol., Inc., 587 F.2d 27, 29 (9th Cir. 1978) ('It is a
> > well established rule that the duty to move a case is on the
> > plaintiff and not on the defendant or the court.').
>
> Order of Conditional Dismissal in Case No. 16-901 at 1–2.
>
> The Court dismissed the case for failure to prosecute pursuant to Rule
> 41(b), but it provided "that if Plaintiff shall certify to this Court,
> within thirty days of this Order, that she has initiated arbitration, the
> foregoing Order shall stand vacated and this case shall forthwith be
> restored to the calendar."  Id. at 2.  Mikhak filed an "Opposition to
> Defendant's motion to dismiss without prejudice," which largely
> reargued the facts of her case, see Plaintiff's Opposition to
> Defendant's Motion, and the Court explained again how the Order of
> Conditional Dismissal operated, and stated that "the Court will not
> consider any submissions by the parties in this case, save and except
> from Plaintiff, filed on or before January 4, 2018, stating that she has
> initiated arbitration," Order re "Plaintiff's Opposition to Defendant's
> Motion" in Case No. 16-901.  Mikhak filed a Notice of Appeal, thus
> terminating her case in this Court.  See Notice of Appeal in Case No.
> 16-901.
>
> Not insignificantly, in that appeal, the Ninth Circuit upheld this
> Court's dismissal of Mikhak's case for failure to prosecute.  See
> USCA Memorandum in Case No. 16-901.  The court held that this

Court "did not abuse its discretion by dismissing Mikhak's action for failure to prosecute because Mikhak did not comply with the district court's orders directing Mikhak to initiate arbitration despite being warned that noncompliance could result in dismissal." Id. at 2.

Order Denying Motion to Set Aside Judgment (dkt. 69) at 5–6.  The Ninth Circuit further "reject[ed] as unsupported by the record [Mikhak's] contentions that defendant and its counsel committed perjury, that defendant's counsel and the district court engaged in misconduct, or that [Mikhak] was denied an opportunity to file reply briefs in response to various filings by defendant." Id. at 3.

Mikhak sought both a panel rehearing and a rehearing en banc at the Circuit, both of which were denied.  See Order (dkt. 85) in Case No. 16-cv-901-CRB at 1.  And Mikhak sought a writ of certiorari at the United States Supreme Court, which was also denied.  See USCA Order (dkt. 90) in Case No. 16-cv-901-CRB at 1.

In September 2021, Mikhak filed a new case, Mikhak v. University of Phoenix et al., Case No. 21-cv-6919-CRB, again suing UOP and individual UOP employees, as well as the law firm Littler Mendelson, P.C. and individual attorneys who had represented UOP.  See generally Compl. (dkt. 1).  The Court related Mikhak's new case to Mikhak's earlier case, see Order Relating Cases (dkt. 50), and— after ruling on additional motions, see, e.g., Order Denying Motion for Recusal (dkt. 68); Order Denying Motion to Set Aside Judgment; Order Denying Motion to Disqualify Judge (dkt. 87)—granted Defendants' motion to dismiss, see Order Granting Motion to Dismiss (dkt. 96).  The Court held that the complaint violated Rule 8 of the Federal Rules of Civil Procedure because it "includes sixty-two causes of action against thirteen defendants," had to be filed on ECF in six parts, included five sets of exhibits, and totaled 1,369 pages.  Id. at 2.  The Court further explained that the complaint was "'confusing, distracting, ambiguous, and unintelligible.'"  Id. (quoting Schmidt v. Hermann, 614 F.2d 1221, 1224 (9th Cir. 1980)).  And the Court explained that it

cannot determine with certainty if Ms. Mikhak is attempting to relitigate her previous case before this Court, Mikhak v. University of Phoenix et al., No. 16-cv-901-CRB. The Complaint actually refers to Part 1 as "My Initial Complaint" and to Part II as "My New Complaint," See Compl. at 1, 2, and it appears that both the 16-cv-901-CRB case and Part I of the current case allege that Ms. Mikhak was subjected to discrimination, harassment and retaliation while

United States District Court
Northern District of California

employed at UOP.  See Opp'n at 4 (conceding that "both involve the
same transactional nucleus of facts").  This raises concerns about res
judicata, as the Court dismissed the prior case in a final judgment that
Ms. Mikhak appealed and the Ninth Circuit affirmed.

Id. at 3.  The Court granted Mikhak leave to amend, directing her to keep the amended complaint

"short and to the point."  Id. at 4.

Mikhak filed the FAC on August 22, 2022.  See FAC.  The FAC is 96 pages, attached to

which is a 48-page Addendum and 32 pages of flow charts and tables.  Id.  It includes sixty-two

separate claims, many of which fail to state which defendant is allegedly liable for the alleged

misconduct.  See, e.g., Claims 1–22.  Despite Mikhak's efforts to improve upon the original

complaint, the FAC is not a model of clarity.  It is repetitive.  It is not "short and to the point."

Mikhak seems to believe that short and to the point is not possible.  See Motion to Exceed Page

Limit (dkt. 120) (Mikhak asserting: "Plaintiff's case has evolved into a Complex Litigation Case

involving allegations based on events that happened over the span of many years.").

There are two main threads in the FAC.  First, the FAC contends that Littler Mendelson

and the attorney defendants committed fraud, and violated related statutes, by making false

representations to the Court in the course of the first litigation.  Second, it contends that the UOP

defendants committed fraud, and violated related statutes, by drafting and implementing the

arbitration agreement improperly, by lying to the Court in the course of the first litigation, and by

giving a false reference when a prospective employer inquired about Mikhak.

Defendants have moved to dismiss the FAC based on Rule 12(b)(6) of the Federal Rules of

Civil Procedure.[3]

## II.     LEGAL STANDARD

Under Rule 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon

which relief may be granted.  The Court may base dismissal on either "the lack of a cognizable

legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Godecke

v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (cleaned up).  A complaint must

plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

---

[3] They also argue that the Court should dismiss the FAC because it violates Rule 8.  See Mot. at
20–21.  The Court does not reach this argument.

1  face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cleaned up).  A claim is plausible "when the

2  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

3  defendant is liable for the misconduct alleged." Id.  "Threadbare recitals of the elements of a

4  cause of action, supported by mere conclusory statements, do not suffice" to survive a 12(b)(6)

5  motion. Id. (citing Twombly, 550 U.S. at 555).  When evaluating a motion to dismiss, the Court

6  "must presume all factual allegations of the complaint to be true and draw all reasonable

7  inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561

8  (9th Cir. 1987).

9       If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to

10  amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, a court may deny leave to

11  amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure

12  to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by

13  virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG

14  Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

15       Courts must construe pro se pleadings liberally and hold such pleadings to a less stringent

16  standard than those drafted by attorneys. Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per

17  curiam); Hughes v. Rowe, 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of [a pro se

18  litigant's complaint] 'however inartfully pleaded' are held 'to less stringent standards than formal

19  pleadings drafted by lawyers . . . .'" (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972))).  A

20  court should dismiss a pro se complaint if "it is absolutely clear that the deficiencies of the

21  complaint could not be cured by amendment." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir.

22  2012).

23  **III.   DISCUSSION**

24       The Court turns first to (A) the claims against the attorney defendants, then to (B) the

25  claims against the UOP defendants, and finally to (C) the federal claims.

26       **A.   Claims Against Attorney Defendants**

27       The FAC's claims against the attorney defendants fail for a number of reasons.  This order

28

5

addresses three.[4]

### 1. Litigation Privilege

Mikhak contends that UOP's attorneys—all of them,[5] though Defendant Dal Cielo's name is ubiquitous in the FAC—"presented the UOP's witnesses' perjured testimonies and forged documents to create an 'optical illusion,' or to intentionally make false representations of my faculty status at the time of contract formation.  In this way, they helped the UOP to continue to harass and retaliate against me even during trial,[6] post-trial, and appeal to win the arbitration argument and the dismissal of my <u>Original</u> Complaint with prejudice."  FAC at 2 ¶ 8.  Each claim against the attorneys involves their allegedly fraudulent or deceptive conduct in the course of representing UOP in the earlier lawsuit.  <u>See, e.g.</u>, <u>id.</u> at 12 ¶ 63 ("When the attorney defendants utilized the tactics of perjury and fraud during trial, post-trial, and appeal proceedings, they helped the UOP to harass and retaliate against me in its continuing violation of [FEHA].");  <u>id.</u> at 13 ¶ 67 ("Their retaliation was in the form of Dal Cielo filing a 'letter-response' (dkt. 46) that can best be described as a 'motion for summary judgment' urging the district court to a harsh and unfair dismissal of my entire civil rights case with prejudice");  <u>id.</u> at 21 ¶ 111 ("Dal Cielo unlawfully presented forged evidence under oath to make a false representation that the UOP had given me 'plenty of time' to familiarize myself with the arbitration agreement");  <u>id.</u> at 33 ¶ 171 ("Dal Cielo failed to disclose that contract formation happened at a time that I had not even yet passed the Certification Stage");  <u>id.</u> at 39 ¶ 203 ("Dal Cielo unlawfully concealed that the UOP had induced me to click 'Accept,' to make a false representation that 'parties manifested <u>mutual assent</u>.'"[7]).

---

[4] Defendants also argue that the claims are barred by res judicata.  <u>See</u> Mot. at 8.  The Court does not reach this argument.

[5] As Defendants rightly point out, the allegations against some of the attorney defendants are particularly thin.  <u>See</u> Mot. at 10–12 (Defendant Spinelli appears on the caption page of some filings and appeared at the 10/27/17 show cause hearing; Defendant Ramos' name appeared on a caption page).  Defendant Walls is sued only because he participated in an EEOC mediation seven years ago.  <u>See</u> Opp'n at 10; Reply at 23–24.  These are not adequate bases for liability.

[6] There was no trial; Mikhak presumably means before the district court.

[7] Notably, many of the examples Mikhak provides of false representations or unlawful concealments are simply arguments by Dal Cielo that Mikhak believes had little support.  <u>See, e.g.</u>, <u>id.</u> at 45 ("Dal Cielo made a <u>new</u> intentional false representation during appeal that 'mutual misunderstanding is not fatal unless the misunderstanding 'goes to conflicting and irreconcilable meanings of a material term that could have either but not both meanings.'");  <u>see also</u> <u>id.</u> at 46 ("But the differences between the meaning I attached to the term 'faculty member' and the

6

1    That the FAC only brings claims against these defendants based on their actions as attorneys is

2    further evident in the FAC's Table 1 ("A summary of each attorney defendants' involvement"),

3    which includes only columns for "Made an appearance during the EEOC mediation,"

4    "Participated in pleading preparations during trial or post-trial," "Made appearance during trial,"

5    and "Participated in pleading preparations during appeal."  FAC Table 1 (dkt. 111-1) at 2.

6            Actions by attorneys in the context of litigating disputes are absolutely privileged pursuant

7    to California Civil Code § 47(b)(2), the litigation privilege, which "applies to any communication

8    (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized

9    by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical

10   relation to the action."  Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990).  It does not matter if the

11   attorneys are acting out of malice.  See Ascherman v. Natanson, 23 Cal. App. 3d 861, 864–65

12   (1972).  The "only exception" to the absolute privilege is for malicious prosecution actions.

13   Silberg, 50 Cal. 3d at 216.  The Supreme Court of California has explained that "in immunizing

14   participants from liability for torts arising from communications made during judicial proceedings,

15   the law places upon litigants the burden of exposing during trial the bias of witnesses and the

16   falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending

17   roundelay of litigation, an evil far worse than an occasional unfair result."  Id. at 214; see also

18   Edwards v. Centex Real Estate Corp., 53 Cal. App. 4th 15, 30 (1997) ("the privilege is extended to

19   attorneys to protect them from the fear of subsequent derivative actions for communications made

20   in the context of judicial proceedings.").  This Court, and the parties, have been engaged in a

21   seemingly "unending roundelay of litigation" for the past six years.

22           Mikhak's arguments for why the litigation privilege should not end the roundelay are

23   unpersuasive.  There is no requirement that relevant communications be made in good faith.  The

24   _____

25   meaning the UOP expected me to attach to 'faculty member' are conflicting and irreconcilable.");
     see also id. at 78 ("Dal Cielo intentionally quoted me out of context and abused my words instead

26   of telling the truth, the whole truth, and nothing but the truth.").  Mikhak was free to counter,
     contemporaneously or on appeal, arguments or assertions that she thought were wrong.  But

27   arguments and assertions that an opposing side believes are wrong do not form the basis for a
     lawsuit against the attorneys who made them.  See also Opp'n to Admin. Mot. at 3 n.2 (stating that

28   Mikhak repeatedly accuses Defendants of perjury as a catch-all for arguments she does not agree
     with).

1    language Mikhak cites to, from <u>Edwards</u>, pertains to communication prior to litigation. <u>See</u> Opp'n

2    at 17–18 (citing <u>Edwards</u>, 53 Cal. App. 4th at 34–35); <u>Edwards</u>, 53 Cal. App. 4th at 35 ("the

3    verbal proposal of litigation must be made <u>in good faith</u>"). The communication alleged here all

4    transpired during the litigation. <u>See, e.g.</u>, FAC at 9 ("Dal Cielo participated in pleading

5    preparations during trial and post-trial . . . and during appeal."). The litigation privilege is not

6    limited to government actors. <u>See</u> Opp'n at 18; <u>Silberg</u>, 50 Cal. 3d at 210 (defendant at issue was

7    spouse's attorney; no indication she was a government actor). The causes of action for which the

8    attorney defendants assert the litigation privilege arise under state law. <u>See</u> Opp'n at 19; Reply at

9    4. And the acts Mikhak complains of are entirely communicative acts. <u>See</u> Opp'n at 18–19. The

10    sole example she offers of a non-communicative act is "Dal Cielo's malicious actions of filing her

11    MTD 2.0, which resulted in [negative litigation consequences to Mikhak]." <u>Id.</u> at 19. Filing a

12    motion to dismiss[8] is of course a communicative act, regardless of what consequences flow from

13    it. <u>See, e.g.</u>, <u>G&G Closed Circuit Events, LLC v. Parker</u>, No. 20-cv-1017 TWR (MDD), 2021 WL

14    5299850, at *3 (S.D. Cal. Aug. 2, 2021) ("Court filings are precisely the type of communications

15    that are subject to the Litigation Privilege.").[9]

16       Mikhak's assertion that there are five applicable exceptions to the litigation privilege is

17    also incorrect. Her reference to the "crime-fraud" exception to the attorney-client privilege has no

18    bearing on the litigation privilege. <u>See</u> Opp'n at 21–22. Her argument that because there is an

19    exception for the tort of "malicious prosecution," there should be an exception for the non-tort of

20    "malicious defense," <u>see id.</u> at 23–25, has no legal basis. The claims Mikhak has brought, none of

21    which are malicious prosecution claims, are plainly subject to the privilege. <u>See</u> <u>Ang v. Wells</u>

22    <u>Fargo Bank, N.A.</u>, No. 18-199 PSG (SHKx), 2018 WL 6131212, at *5 C.D. Cal. June 25, 2018)

23

---

24    [8] Dal Cielo did not actually file a motion to dismiss. <u>See</u> Order re "Plaintiff's Opposition to Defendant's Motion to Dismiss Without Prejudice" (dkt. 50) in Case No. 16-cv-901-CRB ("No

25    motion to dismiss is pending in this case"). What Mikhak refers to as the Motion to Dismiss 2.0 was, presumably, the November 28, 2017 letter that Dal Cielo wrote to the Court responding to

26    Mikhak's own letter to the Court of November 24, 2017, <u>see</u> 11/28/2017 Letter (dkt. 46) in Case No. 16-cv-901-CRB, asking the Court to dismiss the case with prejudice for failure to prosecute.

27    Writing to the Court advocating on behalf of one's client about an ongoing case is a communicative act.

28    [9] Mikhak's argument that the litigation privilege should not apply because Defendants conspired with the Court, <u>see</u> Opp'n at 20, finds no support in fact or law.

1    (allegations that lawyer for Wells Fargo participated in fraudulent court case against him were

2    barred by the litigation privilege).  Her reliance on Silberg's reference to extrinsic fraud is also

3    misguided.  See Opp'n at 25 (citing Silberg, 50 Cal.3d at 214).  Silberg, in the course of

4    recognizing the litigation privilege as "'the backbone to an effective and smoothly operating

5    judicial system,'" stated that a litigant should not be permitted "to attack the integrity of evidence

6    after the proceedings have concluded except in the most narrowly circumscribed situations such as

7    extrinsic fraud," lest such an attack "impermissibly burden, if not inundate, our judicial system."

8    50 Cal. 3d at 214 (quoting McClatchy Newspapers, Inc. v. Superior Court, 189 Cal. App. 3d 961,

9    970 (1987)).  Mikhak has only alleged intrinsic—not extrinsic—fraud in this case, see Kachig v.

10   Boothe, 22 Cal. App. 3d 626, 632–33 (1971) ("California cases uniformly hold that the

11   introduction of perjured testimony or false documents in a full litigated case constitutes intrinsic

12   rather than extrinsic fraud"), and her attacks on the earlier lawsuit implicate Silberg's concerns.

13   Nor have Defendants here intentionally destroyed or altered physical evidence, implicating the

14   spoliation exception of Civil Code section 47(b)(2).  Mikhak asserts only that Defendants

15   "presented forged documents and perjured testimonies," Opp'n at 6; see also FAC at 2 ¶ 8, which

16   is distinct from destroying or altering existing evidence.  Moreover, the exception "only applies

17   when the alleged alteration or destruction is intended to deprive a party of the 'use' of that

18   evidence." Laborde v. Aronson, 92 Cal. App. 4th 459 (2001).  Defendants' alleged acts—

19   misrepresenting to the Court what the evidence showed—do not implicate the spoliation

20   exception.  See Kupiec v. Am. Int'l Adjustment Co., 235 Cal. App. 3d 1326, 1333 (1991)

21   (instructing clients to lie in depositions is not destruction of evidence, as "the 'destruction' was

22   accomplished entirely by statements made in the litigation.'"); Kenne v. Stennis, 230 Cal. App.

23   4th 953, 971 (2014) ("all the communications . . . including the allegedly false declarations . . .

24   were connected directly to the prosecution of those two petitions" and were therefore subject to

25   the litigation privilege).

26           Accordingly, the litigation privilege bars Mikhak's claims against the attorney defendants.

27           **2.      Statute of Limitations**

28           Mikhak's claims against the attorney defendants are also time-barred.  Mikhak concedes

United States District Court
Northern District of California

9

that she discovered the attorney defendants' alleged fraud two weeks before the Court dismissed her earlier lawsuit. See Opp'n Ex. 7C (dkt. 123-8) at 10 (identifying November 24, 2017 as the date "when Plaintiff first discovered fraud on the court"). She concedes that the statute of limitations for a fraud claim is three years. Opp'n at 43. And she brought this second suit on September 7, 2021, see Compl., more than three years after November 24, 2017. She argues, though, that her claims are timely because of equitable estoppel and equitable tolling. See Opp'n at 35. Not so.

### a.      Equitable Tolling

Equitable tolling focuses on "whether there was excusable delay by the plaintiff: 'If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.'" Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002) (citing Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (2000)). Mikhak makes a number of arguments for tolling, none of which are persuasive.

Mikhak argues that her fraud claims were tolled because she "raised the issue of fraud in contract formation" in her late 2017 filings. Opp'n at 35. The Court does not understand this argument, nor how arguing that she was fraudulently induced by the UOP defendants to enter into the arbitration agreement would toll the argument that UOP's lawyers subsequently defrauded the Court in litigating the validity of the arbitration agreement. Mikhak also argues that her claims were tolled because she "did not know contract law and did not know that her counsel was misled and that she could no longer rely on them." Opp'n at 37. But Mikhak knew by November 24, 2017 that the attorney defendants had allegedly lied; moreover, "it is the discovery of facts, not their legal significance, that starts the statute." Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1113 (1988).

Mikhak argues that the statute of limitations was tolled based on the continuing violations doctrine until the "last alleged unlawful act," or, relatedly, the "last overt act" of the conspiracy. Opp'n at 37–40. She argues that defendants' misconduct "continued into appeal until 1/21/2019." Id. at 38. The "last overt act" is a concept related to conspiracies, which this is not. See generally

United States District Court
Northern District of California

FAC.  Moreover, the continuing violations doctrine does not apply where there was "a series of discrete, independently actionable alleged wrongs" and the plaintiff was "aware of, and recognized as wrongful" the acts prior to the limitations period.  See Atyeh v. Canon Business Solutions, Inc., 55 Cal. 4th 1185, 1198 (2013).  Though Mikhak contends that the "last alleged unlawful act" here was the attorney defendants' participation in the appeal of the earlier lawsuit,[10] see Opp'n at 38, Defendants note that their final appellate filing, and therefore their last opportunity to have made a fraudulent misrepresentation, was actually in October 2018.  See Reply at 11 (citing Ninth Circuit Case 17-17535 dkts. 33–35).  In addition, the Court agrees with Defendants that the "new" fraud that Dal Cielo allegedly introduced at that time is the same argument Defendants and Mikhak have been sparring about from the beginning—whether the term "faculty member" includes "faculty candidates."  Compare FAC ¶ 53 (Dal Cielo "resorted to presenting new perjured testimonies during appeal to make an intentional false representation that 'faculty member' is an all-encompassing term for 'faculty candidate'"); with id. ¶ 42 (Dal Cielo at the district court "falsely suggested that 'faculty member' is an umbrella term for 'faculty candidate'").[11]  It was not a new argument in October 2018, but had been conveyed to Mikhak well before she "discovered fraud for the first time" in November 2017.  No representations made by Defendants in October 2018 extended the start of the limitations period.  Mikhak has also failed to demonstrate either that her filing with DFEH or her appeal of the earlier lawsuit tolled the statute of limitations here.[12]

**b.    Equitable Estoppel**

"Equitable estoppel . . . 'focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit.'"  Johnson, 314 F.3d at 414 (citing Santa Maria, 202 F.3d at 1176).  Equitable estoppel does not apply here because, as Mikhak recognizes, she would have to

---

[10] Defendants note, and Mikhak concedes, that Muraco and Ramos were uninvolved in the appeal. See Reply at 11; FAC Table 1.
[11] See also Order Denying Motion to Set Aside Judgment at 3 ("[one] of Mikhak's central arguments then [was] that the Court was led to believe that Mikhak was a faculty member, although she was really a faculty candidate. . . . But she made a variation of those same arguments when opposing arbitration back in 2016."); see also Reply at 12 n.6 (collecting excerpts from earlier lawsuit in which Mikhak argued this point).
[12] While Mikhak appears to be correct that a COVID-related Emergency Order in California tolled the limitations period for six months, a six-month extension does not make Mikhak's fraud claims timely.  See Opp'n Ex. 1 (dkt. 123-1) at 5.

point to some conduct by Defendants apart from their initial alleged wrongdoing.  See Opp'n at 35; Lukovsky v. City & County of San Francisco, 535 F.3d 1044, 1051–52 (9th Cir. 2008) ("the plaintiff must point to some fraudulent concealment, some active conduct by the defendant 'above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'") (quoting Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006)).  She has not. Mikhak argues that "When Dal Cielo committed her fraud upon the court, she equitably estopped the SOLs" because Dal Cielo "filed the '2.0 version of her Motion to Dismiss.'"  Opp'n at 35.  But that conduct is part of Mikhak's fraud claims.  That conduct also had nothing to do with preventing Mikhak from filing suit (indeed, Dal Cielo argued that Mikhak had failed to take action to move the pending suit forward).  And there is no basis to conclude that that conduct was intended to induce Mikhak to act to her detriment—rather, it was intended to get the Court to act.

Mikhak also points to conduct by this Court as a basis for equitable estoppel.  See Opp'n at 36 ("Judge Breyer also equitably estopped the SOL because it robbed Plaintiff of an opportunity to move the Court to hold the Defendants accountable for having won the arbitration agreement by fraud.").  But conduct by the Court cannot establish equitable estoppel.  See Johnson, 314 F.3d at 414 ("Equitable estoppel . . . 'focuses on actions taken by the defendant'").

Accordingly, neither equitable tolling nor equitable estoppel apply, and the claims against the attorney defendants are untimely.

### 3.    Failure to State a Claim

Mikhak's claims against the attorney defendants also fail, to the extent that they are premised on fraud, because they fail to state a claim for fraud.  "Under California law, a cause of action for fraud requires the plaintiff to establish: (1) a knowingly false representation by the defendant; (2) made with intent to deceive or induce reliance by the plaintiff; (3) justifiable reliance by the plaintiff; and (4) resulting damages."  Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (emphasis added).  Again and again, though, the FAC alleges that the attorney defendants made misrepresentations to the courts—about the circumstances of Mikhak entering into the arbitration agreement, the effect of the arbitration agreement, and what kind of person Mikhak was.  See, e.g., FAC ¶ 42 ("Dal Cielo falsely suggested that 'faculty member' is an

umbrella term for 'faculty candidate'"); <u>id.</u> ¶ 111 ("Dal Cielo unlawfully presented forged

evidence under oath to make a false representation that the UOP had given me 'plenty of time' to

familiarize myself with the arbitration agreement"); <u>id.</u> ¶ 171 ("Dal Cielo failed to disclose that

contract formation happened at a time that I had not even yet passed the Certification Stage"); <u>id.</u> ¶

203 ("Dal Cielo unlawfully concealed that the UOP had induced me to click 'Accept,' to make a

false representation that 'parties manifested <u>mutual assent</u>.); <u>id.</u> ¶ 69 ("the district court relied on

Dal Cielo's . . . misrepresentations of me as the 'plaintiff wants to flout the court's order,' or the

'Noncompliant plaintiff who with her undue delay wasted tax payer's resource[.]").

Mikhak does not allege that the misrepresentations were made with the intent to deceive

her. Nor does she allege that she "saw and relied on the alleged misrepresentations" to her

detriment. <u>See</u> <u>Brown v. Vans Int'l Foods, Inc.</u>, No. 22-cv-00001-WHO, 2022 WL 1471454, at

*12 (N.D. Cal. May 10, 2022). Indeed, as Defendants point out, she could not, as she asserts that

she was unaware of the fraudulent statements until November 24, 2017, more than a year after the

Court compelled arbitration. <u>See</u> FAC ¶ 25 ("November 24, 2017, the date I first discovered the

fraud."). And she could not have relied on any statements after November 24, 2017, because at

that point she knew that they were fraudulent. <u>See</u> <u>Country Fresh Batter, Inc. v. Lion Raisins,</u>

<u>Inc.</u>, No. 1:17-cv-1527-DAD-BAM, 2018 WL 1071330, at *3 (E.D. Cal. Feb. 23, 2018) ("The

California Supreme Court has held that as a matter of law, a plaintiff may not claim justifiable

reliance in support of a fraud claim when it knew the defendant's statement to be false.").

Mikhak argues in her opposition brief that she and her counsel saw and relied on the

Spence declaration, which Defendants submitted in support of the motion to compel arbitration in

the earlier lawsuit.[13] Opp'n at 14. Specifically, Mikhak points to the following statement:

"faculty and faculty candidates, collectively, are hereinafter referred to as 'faculty.'" <u>Id.</u> That

language is from the first paragraph of Spence's declaration, where Spence was defining the terms

that she would use in the remainder of the declaration. <u>See</u> Spence Decl. (dkt. 1-7 at 201).[14] A

---

[13] Spence states in that declaration that she is the "Senior Director, Faculty Services for Defendant
Apollo Education Group, Inc." <u>See</u> Spence Decl. (dkt. 14-2) in Case No. 16-cv-901-CRB. She is
not one of the attorney defendants. <u>See also</u> FAC caption (listing Spence as a UOP employee).
[14] <u>See id.</u> ("In my position I am involved in oversight of the processes associated with assigning

United States District Court
Northern District of California

declarant is entitled to define the terms in her declaration however she likes.  She could have said: "faculty and faculty candidates, collectively, are hereinafter referred to as 'zebras.'"  That statement would not be false unless she did not thereafter refer to them as zebras.  Spence's statement was not a false representation, let alone one directed at Mikhak.  Nor does it make sense that Mikhak would have justifiably relied on Spence's definition of a term in her declaration, resulting in damages.  See also Wescott v. Daniel, No. 21-cv-10011-JCS, 2022 WL 2496264, at *3 (N.D. Cal. May 25, 2022) ("no authority recognizing a fraud or misrepresentation claim where a party relies on opposing counsel's . . . characterization—in a filing to a court or similar tribunal. . . . no indication in California caselaw that the state courts would embrace . . . novel theory of fraud by opposing counsel").  Mikhak's repeated assertions that either her counsel or the Court allegedly relied on other false representations, see Opp'n at 15–16, also do not support a fraud claim brought by Mikhak against these attorney defendants.

Accordingly, because of the litigation privilege, because of the statute of limitations, and because of the FAC's failure to state a claim for fraud, the claims against the attorney defendants are DISMISSED.

### B.      Claims Against UOP Defendants

The FAC's claims against the UOP defendants fall into three categories: (1) claims relating to their conduct pre-litigation, (2) claims relating to their conduct in the course of litigation, and (3) a false reference claim.  All fail.

#### 1.      Litigation Conduct

The FAC alleges, among other things, that the UOP defendants used perjury and fraud to harass Mikhak during trial, see FAC ¶ 63, harassed and retaliated against her with their fraudulent misrepresentations and perjury during the judicial and appeal proceedings, id. ¶ 64, "voluntarily disclosed that [she] had clicked 'Accept' to the Faculty Acknowledgment Detail," id. ¶ 204, and omitted material facts with evidentiary value about the Faculty Handbook, id. ¶ 422.  The Court

---

faculty members and faculty candidates to teach courses at the University of Phoenix.  (Faculty and faculty candidates, collectively, are hereinafter referred to as 'faculty.')  I make the following declaration on the basis of my own personal knowledge and could testify to the same if called as a witness in this matter.").

United States District Court
Northern District of California

1   addresses a few of the reasons these claims do not succeed.[15]

### a.   Litigation Privilege

2
3       Just as with the attorney defendants, conduct by the UOP defendants in the course of
4   litigating the earlier lawsuit is protected by the litigation privilege.  California Civil Code §
5   47(b)(2) privileges "any communication (1) made in judicial or quasi-judicial proceedings; (2) by
6   litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4)
7   that have some connection or logical relation to the action."  Silberg, 50 Cal. 3d at 212.  The
8   privilege extends not only to parties but to witnesses.  See Pettitt v. Levy, 28 Cal. App. 3d 484,
9   488 (1972) ("The privilege is accorded not only to parties but to witnesses, even where their
10  testimony is allegedly perjured and malicious. . . . The resulting lack of any really effective civil
11  remedy against perjurers is simply part of the price that is paid for witnesses who are free from
12  intimidation by the possibility of civil liability for what they say.") (cleaned up); see also Carden
13  v. Getzoff, 190 Cal. App. 3d 907, 915 (1987) ("our Supreme Court long ago ruled that injurious
14  perjury and suborning perjury cannot be the basis of a civil action. . . . even malicious publications
15  'are protected as part of the price paid for affording litigants the utmost freedom of access to the
16  courts.'").  Just as with the attorney defendants, Mikhak's arguments against the application of the
17  privilege here, see Opp'n at 17–27, are unpersuasive.

18      Accordingly, the litigation privilege bars Mikhak's litigation-related claims against the
19  UOP defendants.

### b.   Statute of Limitations

20
21      Mikhak's fraud claims against the UOP defendants for their litigation conduct are untimely
22  for the same reasons that her fraud claims against the attorney defendants are untimely.  Her Title
23  VII and FEHA claims against the UOP defendants are also untimely.  Defendants' last appellate
24  filing was October 1, 2018, and so Mikhak was required to file a DFEH charge by October 1,
25  2019.  See Romano v. Rockwell Intern., Inc., 14 Cal. 4th 479, 492 (1996).[16]  Mikhak's DFEH

26

27  ───────────────────
    [15] The Court does not reach Defendants' res judicata argument.  See Mot. at 16.
    [16] Mikhak is incorrect that she had three years to file her DFEH charge for conduct that ended, at
28  the latest, on October 1, 2018.  See Opp'n at 41, n.56; Moreno v. City of Porterville, No. 1:21-cv-
    865-JLT-BAM, 2022 WL 14128245, at *5 (E.D. Cal. Oct. 24, 2022) (new three-year statute of

charge was not filed until October 23, 2020 at the earliest.  See Opp'n at 43 ("Plaintiff filed her complaint with the DFEH on 10/23/20"); see also FAC ¶ 23 (alleging only that the DFEH issued her a right-to-sue notice on May 25, 2021); but see Opp'n Ex. 6A at 5 (May 4, 2021 DFEH complaint).  That was late.  In addition, Mikhak was required to file a charge with the EEOC within 180 days of the last act of discrimination (again, at the latest, October 1, 2018).  See MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1081–82 (9th Cir. 2006).  Mikhak alleges that she received a Notice of Right to Sue from the EEOC on June 7, 2021, but does not allege when she filed a charge with the EEOC.  See FAC ¶ 24.  She does not attach her charge with the EEOC to her opposition brief, but the Notice of Right to Sue that she does attach, dated June 7, 2021, states that "Less than 180 days have passed since the filing of this charge," see Opp'n Ex. 6B at 6.  Accordingly, the EEOC charge was also late.  Mikhak's argument that her ongoing litigation over her earlier case would have tolled these deadlines or prevented her from meeting them is unpersuasive.

Accordingly, the litigation-related claims against the UOP defendants are time-barred.

### c.      Failure to State a Claim

Just as with the attorney defendants, Mikhak's litigation-related claims against the UOP defendants, to the extent that they are premised on fraud, fail to state a claim.  Because she alleges that the UOP defendants made false representations to the courts, see, e.g., FAC ¶64 (UOP defendants harassed and retaliated against her with their fraudulent misrepresentations and perjury during the judicial and appeal proceedings), Mikhak fails to adequately allege either that these misrepresentations were "made with intent to deceive or induce reliance by [her]" or that there was "justifiable reliance by [her]."  See Smith, 160 F. Supp. 2d at 1152.

### 2.      Pre-Litigation Conduct

The FAC also includes allegations involving UOP defendants' conduct that occurred before the first litigation.  See, e.g., FAC ¶ 98 ("UOP obtained my consent by fraud; when it asked me to click 'Accept' to the arbitration agreement before I finished the Certification stage of my

_____

limitations came into effect on January 1, 2020, and applied to claims that had not lapsed at that date).  Mikhak's claim lapsed before the extension took place.

faculty qualification process"); <u>id.</u> ¶ 116 ("UOP intentionally obtained my consent by fraud when it asked me to study and take a quiz on the Dispute Resolution Policy and Procedures on the outdated (2011–2012) Faculty Handbook that did not include the arbitration agreement."); <u>id.</u> ¶ 129 (UOP intentionally surprised me with the arbitration agreement"). These claims are both time-barred and subject to res judicata.

### a.    Statute of Limitations

Plaintiff accepted the arbitration agreement with UOP in March 2014. <u>See</u> Order Granting Motion to Compel in Case No. 16-cv-901-CRB at 3. She filed this action in September 2021— seven and a half years later. <u>See</u> Compl. None of the causes of action she brings has a statute of limitations even approaching seven and a half years. <u>See</u> Mot. at 13 (listing statutes of limitations for Mikhak's claims). Mikhak's arguments about equitable estoppel and equitable tolling, which seem aimed at both sets of defendants, are no more persuasive as to the UOP defendants than they were as to the attorney defendants. <u>See</u> Opp'n at 34–45. In fact, they are less so. Mikhak was aware of the UOP defendants' alleged pre-litigation fraud <u>before</u> November 24, 2017—the date "when Plaintiff first discovered fraud on the court" pertaining to the litigation. <u>See</u> Opp'n Ex. 7C (dkt. 123-8) at 10. <u>She</u> knew contemporaneously that she was asked to click "Accept" on the arbitration agreement before she had finished the Certification stage of her faculty qualification process, she knew that she had been asked to take a quiz on the 2011–2012 Faculty Handbook but asked to click "Accept" to a later Handbook, and she knew that she felt surprised by having to agree to the arbitration agreements. Whether or not she knew that such actions could support a cause of action is not the point. <u>See Jolly</u>, 44 Cal. 3d at 1113 ("it is the discovery of facts, not their legal significance, that starts the statute."). Even accepting Mikhak's suggestion that she did not know those facts contemporaneously, she admits in her opposition brief that she knew them while the earlier litigation was going on. <u>See</u> Opp'n at 31–32, n.40 ("Plaintiff's new allegations of fraud were not raised as 'tort claims' in Plaintiff's <u>Original</u> Complaint because the fraud was <u>discovered at the end.</u>"); <u>see also</u> Order of Conditional Dismissal (dkt. 47) in Case No. 16-cv-901-CRB (dismissing case pursuant to Rule 41(b) on December 5, 2017).

The pre-litigation claims against the UOP defendants are therefore untimely.

17

### b.       Res Judicata

"Res judicata, or claim preclusion, prohibits lawsuits on 'any claims that were raised or could have been raised' in a prior action." <u>Stewart v. United States Bancorp</u>, 297 F.3d 953, 959 (9th Cir. 2002) (quoting <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 713 (9th Cir. 2001). "Res judicata applies when there is: '(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties.'" <u>Id.</u>  All three are met here.

First, the earlier lawsuit ended in a final judgment on the merits when the Court dismissed the case for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Order Denying Motion to Set Aside Judgment at 5–6.  That Rule states that unless an order dismissing a case for failure to prosecute says otherwise, such a dismissal "operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).  The Court's order did not state otherwise; moreover, Mikhak seems to have understood the order to be final, because she appealed shortly thereafter.  See Order Denying Motion to Set Aside Judgment at 5–6.

Second, there is either identity or privity between the parties.  UOP was actually a party in the first lawsuit.  See Compl. in Case No. 16-cv-901-CRB.  While the UOP employee defendants, Taylor, Spence, Pepicello, and Walls, were not named in the first lawsuit, they are in privity with UOP.  See <u>Chunhye Kim Lee v. Arizona Bd. of Regents</u>, No. 14-15404, 633 Fed. Appx. 453, 454 (9th Cir. March 21, 2016) ("An employer-employee relationship satisfies the claim preclusion privity requirement."); <u>Knox v. Potter</u>, No. C-03-3638 MMC, 2004 WL 1091148, at *13 (N.D. Cal. May 4, 2004), aff'd 131 F. App'x 567 (9th Cir. 2005) ("Generally, an employer-employee relationship will satisfy the privity requirement for matters within the scope of employment, irrespective of whether the employer or employee is sued first.").

Third, all of the pre-litigation claims that Mikhak brings against the UOP defendants were or could have been raised in the first lawsuit.  Mikhak argues that "Plaintiff's NEW Complaint does not involve her employment and religious discrimination claims, and . . . Plaintiff's new allegations of fraud were not raised as 'tort claims' in Plaintiff's <u>Original</u> Complaint because the fraud was discovered at the end."  Opp'n at 31–32, n.40.  But Mikhak's assertion that the cases contain different claims misses the mark.  "[T]wo cases can have the same transactional nucleus of

facts even if the second lawsuit identifies new claims."  Lenk v. Monolithic Power Sys., Inc., No.

16-cv-2625-BLF (NC), 2017 WL 2491597, at *2 (N.D. Cal. Apr. 20, 2017).  "If claims are related

to the same set of facts and could be conveniently tried together, then there is identity of claims."

Id.

       The FAC's pre-litigation claims against the UOP defendants here arise out of Mikhak's

employment with the UOP, and, in particular, the hiring process.  See generally FAC.  That is

precisely what the first case was about.  See generally Compl. in Case No. 16-cv-901-CRB.

While the claims here focus on the arbitration agreement, and the claims in the earlier case

focused on UOP's allegedly discriminatory decision not to hire Mikhak, there is no denying that

both involve Mikhak trying to obtain faculty status at UOP.  That is the same nucleus of facts, and

both topics could handily be tried together.  See Mpoyo v. Litton Electro-Optical Systems, 430

F.3d 985, 987 (9th Cir. 2005) ("Because both sets of Mpoyo's claims arise from Litton's conduct

while Mpoyo was an employee and specifically from the events leading to his termination, his

claims relate to the same set of facts."); Garcia v. Honeywell Int'l, Inc., No. 13-cv-2399-BAD

(WVG), 2014 WL 2511509, at *2–4 (S.D. Cal. June 3, 2014) (where first case involved claims of

discrimination, harassment, retaliation, unlawful employment practices, breach of contract, and

intentional infliction of emotional distress, and second case involved claims of fraud, obstruction

of justice and conspiracy, RICO conspiracy, and spoliation of evidence, the "purported

'subsequent wrongs' arise from the same transactional nucleus of facts that formed the basis of the

[first case]—the circumstances of his employment and subsequent termination").  Indeed, the

formation of the arbitration agreement was very much at issue in the first case.  See Opp'n to Mot.

to Compel. (dkt. 18) in Case No. 16-cv-901-CRB at 5 ("Plaintiff's reasonable understanding . . .

was that if she clicked 'Accept' to the 2014–2015 Faculty Handbook, she was in agreement to the

policies that would apply to her at the time they will apply to her, when she became a full time

faculty member."), id. at 9 ("One had to acknowledge and accept the arbitration policy if one

desired to keep on working at UOP."); Order Granting Motion to Compel in Case No. 16-cv-901-

CRB at 3 ("According to Mikhak, the University first provided her with an outdated 2011–2012

handbook that lacked any information about arbitration.") (citing Mikhak Decl. (dkt. 18-1) ¶ 16);

19

1  id. at 25 (concluding that arbitration agreement was valid and enforceable, and compelling

2  arbitration).

3        Accordingly, res judicata bars the pre-litigation claims against the UOP defendants.

4              **3.    False Reference**

5        The FAC includes a lone cause of action alleging that the UOP violated California Labor

6  Code § 1050 by providing a false reference about Mikhak to potential future employers.  FAC ¶¶

7  448–49.  Mikhak alleges that this claim "is based on circumstantial evidence which is something

8  that needs to be investigated during the discovery stage."  Id. ¶ 449.  She alleges that in June of

9  2020, she applied to teach a class in the Fall of 2020 at the University of San Francisco, and she

10  never received a response from the department chair.  Id.  The chair allegedly asked Mikhak[17] in

11  an email about her prior experience teaching a psychology class at UOP, Mikhak answered her,

12  and then "she did not reply to any of my emails."  Id.  Mikhak concludes: "I cannot rule out the

13  possibility that she may have contacted the UOP for an employment reference, and the reason I

14  never heard back from her was because the UOP gave me a negative reference[18] in retaliation for

15  my lawsuit."  Id.  She concedes, however, that "It is also possible that she did not offer me a job

16  interview because, as she had alluded to in her initial email, she was prioritizing those with prior

17  psychology teaching experience" and that "[a]nother explanation is that the USF's department

18  chair may have looked up my name online and found out about my employment discrimination

19  lawsuit being dismissed with prejudice."  Id. ¶ 450.

20        These allegations do not plausibly state a claim for false reference.  While they might have

21  sufficed under the Conley pleading standard, see Conley v. Gibson, 355 U.S. 41, 47 (1957) ("a

22  complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

23  the plaintiff can prove no set of facts in support of his claim which would entitled him to relief."),

24  they do not represent "sufficient factual matter, accepted as true, to state a claim to relief that is

25  plausible on its face," see Iqbal, 556 U.S. at 678; see also id. at 679 ("where the well-pleaded facts

26

27  ───────────────
   [17] This allegation seems to contradict the allegation that she never received a response.

28  [18] Note that section 1050 prohibits a "misrepresentation" that "prevents or attempts to prevent the
   former employee from obtaining employment," see Cal. Labor C. § 1050, not a negative reference.

                                          20

do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P.

8(a)(2)).  The Court need not accept as true Mikhak's speculation that the UOP might have given

her a false reference.  See In re Gilead Scis. Sec Litig., 536 F.3d 1055 (9th Cir. 2008) (court need

not "'accept as true . . . unwarranted deductions of fact, or unreasonable inferences.'") (quoting

Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)); Lenk v. Monolithic Power

Sys., Inc., No. 20-cv-8094-BLF, 2021 WL 5233078, at *8 (Nov. 10, 2021) ("Lenk's theory is that

MPS must have given him negative references because he was not hired by On Semiconductor

even though he was exceptionally qualified.  Lenk's bare speculation as to MPS's conduct, and

motivation for such conduct, is insufficient to state a claim for blacklisting.").  Nor does Mikhak

assert in her opposition brief that there are any allegations she could add to strengthen her claim;

rather, she asks the Court to "allow Plaintiff's claim to move forward so she can attain certainty

after investigating it during discovery."  Opp'n at 46–47.  The Court will not do so.  See Iqbal, 556

U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with

nothing more than conclusions.").

Accordingly, the false reference claim and all of the other claims against the UOP

defendants are DISMISSED.

## C.     1983 and Fifth Amendment Claims

Finally, the FAC includes two claims based on 42 U.S.C. § 1983, and one claim based on

the Fifth Amendment.  See FAC ¶¶ 66–73 (alleging that Defendants violated Mikhak's right to

due process of law under the Fourteenth Amendment "because they all contributed, in their own

way, to the fraudulent misrepresentation that helped them win the arbitration argument, and later

to the dismissal of my entire civil rights case with prejudice."); id. ¶ 74 (alleging that "[w]ith their

fraudulent misrepresentation and perjury described above, [Defendants] all violated my Right to

Equal Protection of the Law under the Fourteenth Amendment (42 U.S.C. § 1983). . . ."); id. ¶¶

75–86 (alleging that Defendants' "fraudulent misrepresentation and perjury . . . violated my Fifth

Amendment Right to Due Process in the Constitution of the United States and their California

state law counterparts. . . .").  These claims fail because Defendants are private actors.

21

To state a claim for violation of section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The "definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Id. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Defendants in this case are all private individuals or entities. See, e.g., Gibson v. Univ. of Phoenix, Inc., No. H-07-947, 2007 WL 9754328, at *3 (S.D. Tex. June 29, 2007) (holding that plaintiff could not state a section 1983 claim against UOP because it is a "private university" and plaintiff did not allege any state action). "[P]rivate parties are not generally acting under color of state law, and . . . 'conclusory allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.'" Price v. Hawaii, 939 F.2d 702, 707–08 (9th Cir. 1991) (quoting Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984)). Certainly there are times when private actors act under color of state law. See Gorenc v. Salt River Project Agr. Imp. & Power Dist., 869 F.2d 503, 506–09 (9th Cir. 1989) (citing Lugar, 457 U.S. at 939); Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1140 (9th Cir. 2012). But the FAC includes no allegations that Defendants acted under color of state law here.

Mikhak argues in her opposition brief that Defendants were acting under color of state law because they "appeared to have engaged in corrupt 'conspiracy' with a judge in conjunction with the judge's performance as an official judicial act," citing Dennis v. Sparks, 449 U.S. 24, 28–29 (1980). See Opp'n at 46. Dennis involved allegations that "an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge," which meant that "private parties conspiring with the judge were acting under color of state law." 449 U.S. at 28. There are no allegations in the FAC that Defendants conspired with (or bribed) the Court. To the contrary, the FAC alleges repeatedly that Defendants misled the Court. See, e.g., FAC ¶ 42 ("Dal Cielo falsely suggested that 'faculty member' is an umbrella term for 'faculty candidate' to mislead the court into thinking that the unequal bargaining power was minimal"); id. ¶ 69 ("the district court

relied on Dal Cielo's unjustified pressure tactics and her misrepresentations of me as the 'plaintiff wants to flout the court's order,' or the 'Noncompliant plaintiff who with her undue delay wasted tax payer's resource[.]"). And Mikhak cites to no evidence supporting the conspiracy assertion in her opposition brief. She has failed to allege that Defendants were acting under color of state law for the purposes of section 1983.

Similarly, the Fifth Amendment applies "only to actions of the federal government" and dismissal is proper when defendants are not federal actors. Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001); Barge v. Horwitz, Np. 21-cv-2558-JCS, 2021 WL 6053849, at *6 (N.D. Cal. Aug. 27, 2021) ("the Fifth Amendment claim fails because the Due Process Clause of the Fifth Amendment applies to deprivations by the United States and Plaintiff does not allege that the United States was involved in any of the conduct that gives rise to the claims in this case."). The Defendants here are not federal actors. Mikhak has therefore failed to allege a Fifth Amendment claim.

Accordingly, the section 1983 and Fifth Amendment claims are DISMISSED.

## IV. CONCLUSION

For the foregoing reasons, the FAC is DISMISSED in its entirety. Dismissal is with prejudice, as amendment would be futile. See Leadsinger, 512 F.3d at 532; see also Akhtar, 698 F.3d at 1212 ("it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). All pending motions are denied as moot. This Court no longer has jurisdiction over this case. The parties shall address any additional filings to the Circuit.

**IT IS SO ORDERED.**

Dated: December  7 , 2022

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

23